# In the United States District Court
# for the Southern District of Georgia
# Savannah Division

RAMIN YOUSEFIFAR,

    Plaintiff,

    v.

U.S DEPARTMENT OF STATE,
SECRETARY ANTONY J. BLINKEN,
ASSISTANT SECRETARY RENA
BITTER, CONSUL GENERAL
THATCHER SCHARPF, CONSULAR
OFFICER JANE/JOHN DOE,

    Defendants.

CASE NO. 4:24-CV-109

## ORDER

Plaintiff initiated this suit against Defendants, alleging violations of the Administrative Procedure Act ("APA"), Immigration and Nationality Act ("INA"), and pertinent regulations. Dkt. No. 1. Defendants moved to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 4. Because Defendants attach materials outside of the pleadings to their motion to dismiss, dkt. no. 4-1, the Court converted Defendants' motion into a motion for summary judgment and gave the parties fourteen days to file any supplemental evidence related to the status of Plaintiff's visa application. See Fed. R. Civ. P. 12(d) (allowing conversion of motion to dismiss to summary judgment motion); Fed. R. Civ. P. 56

(governing summary judgment); see also dkt. no. 17. For the reasons set forth below, the Court **GRANTS** Defendants' motion.

BACKGROUND

### I.   Factual Background

Plaintiff, Dr. Ramin Yousefifar, is a citizen of both Iran and Germany. Dkt. No. 1 ¶ 33. Plaintiff was born in Tehran, Iran, but he currently resides in Muenster, Germany. Id. ¶¶ 19, 33. Plaintiff works as a Logistician and Logistics Manager for a "globally recognize[d] fashion company" headquartered in Germany. Id. ¶ 33. Plaintiff's employer sought to transfer him to its offices in Savannah, Georgia. Id. ¶ 35. To do so, the company submitted a L-1A visa petition on Plaintiff's behalf. Id.

On February 13, 2023, Plaintiff attended the interview for his L-1A visa at the Frankfurt Embassy. Id. ¶ 39. After the interview, the consular officer verbally informed Plaintiff that his case required further administrative processing pursuant to § 221(g) of the Immigration and Nationality Act. Id. ¶¶ 5, 39; see also dkt. no. 4-1 (U.S. Department of State attorney-advisor declaration stating that Plaintiff's visa was denied pursuant to INA § 221(g)). On February 14, 2023, Plaintiff received an email from the United States Department of State that contained a list of eleven questions "derived from Form DS-5535, Supplemental Questions for Visa Applicants." Dkt. No. 1 ¶ 40. These questions sought information about Plaintiff's recent international travels,

government service, online presence, and more. Id. Plaintiff provided the requested information by email that same day. Id. Since February 2023, the Frankfurt Consulate has repeatedly confirmed that Plaintiff remains in administrative processing, where his visa petition has remained for more than fifteen months. Id. ¶¶ 41, 49.

Plaintiff contends that the delay in processing his visa petition is "significant and irregular," and that "Plaintiff is one among a small number of such applicants subjected to this kind of processing, and thus has effectively been placed *last* in line—or, at least, far behind others who applied, sometimes much later." Id. ¶¶ 43, 64 (emphasis in original). As a result of this alleged delay, Plaintiff has been "forced" to remain outside the United States "at great personal and professional cost." Id. ¶ 66. Specifically, Plaintiff alleges that this delay has limited him to working on projects that can be handled remotely and has impeded Plaintiff's ability to participate in a "planned U.S. expansion project." Id. ¶ 68. Plaintiff now seeks relief pursuant to the Mandamus Act and Declaratory Judgment Act on the grounds that Defendants—the United States Department of State and its Secretary, Assistant Secretary, Consul General and Consular Officer—violated the Administrative Procedure Act ("APA"), the INA, and relevant regulations. See generally id.

Plaintiff filed suit on June 4, 2024. Id. On August 13, 2024, Defendants filed their motion to dismiss. Dkt. No. 4. On September 10, 2024, Plaintiff responded, dkt. no. 9, and on September 23, 2024, Defendants replied, dkt. no. 12. Defendants' motion to dismiss was converted to one for summary judgment on March 19, 2025. Dkt. No. 17.

## II. L-1A Visa Program

L-1A Visas are available to individuals

> who, within 3 years preceding the time of his application for admission into the United States, has been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and who seeks to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof in a capacity that is managerial, executive, or involves specialized knowledge, and the alien spouse and minor children of any such alien if accompanying him or following to join him.

8 U.S.C. § 1101(a)(15)(L). Put simply, individuals are able to apply for a L-1A visa if they have held an executive or managerial role with a company for at least one year and seek to temporarily enter the United States to continue providing these services. Id.

Companies that meet certain requirements—like Plaintiff's employer here—may file a L-1 blanket petition "seeking continuing approval of itself and some or all of its parent, branches, subsidiaries, and affiliates as qualifying organizations."[1] 8

---

[1] These requirements are:

C.F.R. § 214.2(l)(4). This process makes it so that companies do not need to obtain approval of individual visa requests. Dkt. No. 9 at 6. Instead, the "blanket petition" expedites the visa process by allowing individuals to proceed to the consulate interview process directly. Dkt. No. 9 at 6. If an individual is a manager, executive, or professional with special knowledge who works for an entity that qualifies to use blanket petitions, then the individual is classified as an "intracompany transferee." 8 C.F.R. § 214.2(l)(1)(ii)(A). The admittance procedures for an intracompany transferee are proscribed in provisions (5) and (11) of 8 C.F.R. § 214.2(l). Importantly, "Consular officers may grant 'L' classification only in clearly approvable applications." 8 C.F.R. § 214.2(l)(5)(E). L-1A visa applicants still must undergo an in-person interview with a consular officer and the applicant maintains the burden of proof for "establish[ing] that he is

---

(A) The petitioner and each of those entities are engaged in commercial trade or services;
(B) The petitioner has an office in the United States that has been doing business for one year or more;
(C) The petitioner has three or more domestic and foreign branches, subsidiaries, or affiliates; and
(D) The petitioner and the other qualifying organizations have obtained approval of petitions for at least ten "L" managers, executives, or specialized knowledge professionals during the previous 12 months; or have U.S. subsidiaries or affiliates with combined annual sales of at least $25 million; or have a United States work force of at least 1,000 employees.

8 C.F.R. § 214.2(l)(4)(i).

eligible to receive such visa." See 8 U.S.C. § 1202(h) (stating interview is required); 8 U.S.C. § 1361 (detailing applicant's burden of proof). As required by this process, Plaintiff's employer submitted a L-1A blanket petition on Plaintiff's behalf. Dkt. No. 1 ¶ 4. Subsequently, Plaintiff attended an in-person interview at the Frankfurt Embassy. Id. ¶ 5.

**III. Statutory and Regulatory Overview**

Under 8 U.S.C. § 1184(c)(2)(A), "the [Director of Homeland Security] shall provide for a procedure under which an importing employer which meets requirements established by the [Director of Homeland Security] may file a blanket petition to import aliens as nonimmigrants . . . . Such procedure shall permit the expedited processing of visas for admission of aliens covered under such a petition."[2] In other words, this provision allows for an employer to file a "blanket" petition for visas for individuals it has hired in order to expedite the visa process. This statute also provides that the Director of Homeland Security "provide a process for reviewing and acting upon petitions under this subsection . . .

---

[2] Technically, § 1184 states that the Attorney General shall provide for the procedure. However, 6 U.S.C. § 271(b)(5) eliminated the Immigration and Naturalization Service, which was part of the Department of Justice and therefore overseen by the Attorney General. At the same time, § 271 created the Bureau of Citizenship and Immigration Service, which is part of the Department of Homeland Security.

within 30 days after the date a completed petition has been filed."
8 U.S.C. § 1184(c)(2)(C).

Section 1184 serves as the authority for several regulations
that address the State Department's role in the nonimmigrant visa
process. Pertinent here is 22 C.F.R. § 41.121, which provides that
"[w]hen a visa application has been properly completed and executed
in accordance with the provisions of the INA and the implementing
regulations, the consular officer must issue the visa, refuse the
visa, or, pursuant to an outstanding order under INA 243(d),
discontinue granting the visa." 22 C.F.R. § 41.121(a).[3] To be
"properly completed," an application must follow the "form and
manner" prescribed by the applicable regulations and the applicant
must participate in an in-person interview with a consular
officer.[4] 8 U.S.C. § 1202(c) ("Every alien applying for a

---

[3] The regulation also provides that pursuant to an "outstanding order" under 8 U.S.C. § 1253(d), the consular officer must "discontinue granting the visa." 22 C.F.R. § 41.121. This can occur when the Secretary of State orders a pause on visas from specific countries due to diplomatic disputes. Karimova v. Abate, No. 23-5178, 2024 WL 3517852, at *2 n.2 (D.C. Cir. July 24, 2024). This is inapplicable here.

[4] Making or filing an application for a nonimmigrant visa means:

> submitting for formal adjudication by a consular officer of an electronic application, Form DS-160, signed electronically by clicking the box designated "Sign Application" in the certification section of the application or, as directed by a consular officer, a completed Form DS-156, with any required supporting documents and biometric data, as well as the requisite processing fee or evidence of the prior payment of the

nonimmigrant visa and for alien registration shall make application therefor in such form and manner as shall be by regulations prescribed."); 8 U.S.C. § 1202(h) (requiring in-person interview).

Under section 41.121, a visa refusal "must be based on legal grounds, such as one or more provisions of . . . INA 221(g) . . . or other applicable law." 22 C.F.R. § 41.121(a). Section 221(g) of the INA, codified as 8 U.S.C. § 1201(g), states that a visa should not be issued to an applicant if it appears to the consular officer, or the officer "knows or has reason to believe," that the applicant "is ineligible to receive a visa or such other documentation under section 1182 of this title, *or any other provision of law*." 8 U.S.C. § 1201(g) (emphasis added). Relevant to this case, 8 U.S.C. § 1735(a) prohibits issuing a nonimmigrant visa to "any alien who is from a country that is a state sponsor of international terrorism," unless the Secretary of State, in consultation with other agency heads, determines "that

---

processing fee when such documents are received and accepted for adjudication by the consular officer.

22 C.F.R. § 40.1(l)(1). Moreover, a nonimmigrant visa application must include the applicant's full name, birth date and birth place, nationality, marital status, "the purpose and length of his intended stay in the United States . . . and such additional information necessary to the identification of the applicant, the determination of his eligibility for a nonimmigrant visa, and the enforcement of the immigration and nationality laws as may be by regulations prescribed." 8 U.S.C. § 1202(c).

such alien does not pose a threat to the safety or national security of the United States."[5]

## LEGAL AUTHORITY

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" only if it "might affect the outcome of the suit under the governing law." Id. (quoting Anderson, 477 U.S. at 248). The Court must view all facts in the light most favorable to the non-moving party and draw all inferences in its favor. Tolan v. Cotton, 572 U.S. 650, 657 (2014).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the Court that there is an absence of evidence to support the nonmovant's case. See id. at 325. If the movant discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and

---

[5] This statute applies to nonimmigrant visas under 8 U.S.C. § 1101(a)(15). 8 U.S.C. § 1735(a). Section 1101(a)(15)(L) encompasses L-visa applicants such as Plaintiff.

present affirmative evidence to show that a genuine issue of fact does exist. See Anderson, 477 U.S. at 257. The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Or second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117.

## DISCUSSION

### A. Doctrine of Consular Nonreviewability

"The Immigration and Nationality Act (INA) does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions." Dep't of State v. Muñoz, 602 U.S. 899, 908 (2024). "This principle is known as the doctrine of consular nonreviewability." Id. Plaintiff acknowledges that this doctrine "shields from judicial review a consular officer's grant or denial of a visa." Dkt. No. 9 at 18. However, Plaintiff claims that in this case the doctrine has not been triggered because the consular officer has not made a final

decision on Plaintiff's visa and the doctrine cannot shield
Defendants from claims of inaction. Id. at 19.

Plaintiff alleges Defendants failed to fulfill their duty to
process his visa in violation of the INA and that the unreasonable
delay in adjudicating Plaintiff's visa constitutes a violation of
APA § 555(b). Dkt. No. 1. In other words, he does not challenge
the consular officer's *decision* on his visa to trigger the doctrine
of consular nonreviewability.[6] See, e.g., Gonzalez v. Garland, No.
23-24695, 2024 WL 4894389 at *4–5 (S.D. Fla. Oct. 21, 2024)
("Moreover, the Complaint makes clear that Plaintiffs are *not*
seeking judicial review of the consular officer's November 2, 2022
refusal of [plaintiff's] visa application. Rather, they are
seeking to compel the Government to *act* . . . . Therefore, the
consular non-reviewability doctrine is inapplicable here."),
report and recommendation adopted sub nom. Reyes v. Garland, 2024
WL 4893886 (Nov. 26, 2024); Conley v. United States Dep't of State,
731 F. Supp. 3d 104, 110 (D. Mass. Apr. 16, 2024) ("[T]he Court
will assume, without deciding, that the consular nonreviewability

---

[6] Importantly, the doctrine of consular nonreviewability does not
"divest federal courts of jurisdiction." Del Valle v. Sec'y of
State, United States Dep't of State, 16 F.4th 832, 838 (11th Cir.
2021). "As such, our deference goes to our *willingness*, not our
*power*, to review a consular official's decision on a visa
application." Id. (citation and quotations omitted) (emphasis in
original). Because "the doctrine goes to the merits of a claim,"
not the Court's jurisdiction to hear the case, even if the doctrine
did apply then the Court would not lose subject-matter
jurisdiction. Id.

doctrine does not preclude judicial review of an unreasonable-delay claim under the APA."); Khanom v. Kerry, 37 F. Supp. 3d 567, 577 n.10 (E.D.N.Y. 2014) ("To the extent that a plaintiff seeks an order compelling a Consul General to *expedite* their immigrant visa application or otherwise act on the application in the face of a complete failure to adjudicate the application, the failure to take any action on a visa petition falls outside the doctrine of consular non-reviewability[.]" (emphasis in original)).[7] The Court concludes that the doctrine of consular nonreviewability is inapplicable at this stage and the Court has authority to proceed.

## B. Non-Discretionary Duty

Plaintiff argues that Defendants have "breached their duty owed to Plaintiff to properly adjudicate his L-1 visa request in a reasonable period of time" as required by APA § 555(b). Dkt. No. 9 at 7. As a result, Plaintiff seeks judicial review under APA § 706 to compel Defendants to comply with the duties imposed by the INA and regulations to issue a decision on his visa. Id. In response, Defendants contend that they made a final decision on Plaintiff's visa application and that Plaintiff fails to identify

---

[7] Plaintiff argues that Defendants' "broad application of the doctrine of consular nonreviewability" violates the Take Care Clause of the U.S. Constitution because it "shield[s] a consular officer's inaction from judicial scrutiny." Dkt. No. 9 at 20-23. Because the Court concludes that the doctrine of consular nonreviewability does not apply here, the Court need not address this argument.

any non-discretionary duty that requires Defendants to take further action. Dkt. Nos. 4 at 10; 12 at 3. This matters because a claim under APA § 706 can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*. Norton v. S. Utah Wilderness Alliance ("SUWA"), 542 U.S. 55, 64 (2004) (emphasis in original); 5 U.S.C. § 706(1) (The reviewing court shall compel agency action unlawfully withheld. . . ."). Courts can also compel agency action that is unreasonably delayed, "but a delay cannot be unreasonable with respect to action that is not required." SUWA, 542 U.S. at 63 n.1. Thus, Defendants argue that because they have no duty to re-adjudicate a visa decision, any delay here by the agency is not unreasonable under the APA. Dkt. No. 4 at 7–8.

### i.    Duty to Grant or Refuse a Visa

Plaintiff argues, and Defendants do not dispute, that there is a non-discretionary duty for a consular officer to grant or refuse a visa petition. Dkt. No. 9 at 12–13; see generally dkt. nos. 4, 12. This duty is reflected in 22 C.F.R. § 41.121, which explains that consular officers must grant or refuse a visa application. See Khazaei v. Blinken, No. 23-1419, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023) ("Granting or refusing a visa to an applicant who has been interviewed is clearly a discrete agency action. That action, moreover, is required by both the APA and the Department's own regulation."); Vulupala v. Barr, 438 F. Supp. 3d

13

93, 100 (D.D.C. 2020) ("Granting or refusing a final visa application is a mandatory agency action."); <u>Anid Inosoft LLC v. Blinken</u>, No. 22-cv-4721, 2023 WL 7312488, at *4 (N.D. Ga. Nov. 3, 2023) ("Congress has created a nondiscretionary duty to make a final determination on nonimmigrant visa applications."). The crux of the dispute here, however, is whether refusing a visa and then placing it into administrative processing is a final decision that satisfies the non-discretionary duty to grant or refuse a petition.

Before turning to whether visa refusal followed by administrative processing is a final decision, the Court must address the factual question of whether Plaintiff's visa was in fact refused. Here, the declaration from the State Department, Plaintiff's affidavit, and Plaintiff's complaint, demonstrate that the consular officer's non-discretionary duty to grant or refuse the visa was satisfied by the officer's refusal of Plaintiff's application. According to Defendant's declaration, "on th[e] same day" as Plaintiff's consular interview for his visa application, "the consular officer refused Mr. Yousefifar's visa application under Immigration and Nationality Act ("INA") § 221(g), 8 U.S.C. § 1201(g) as the officer was not convinced the applicant was eligible for the visa sought." Dkt. No. 4-1 at 1. Defendant further states that this was because "the consular officer determined that additional security screening was required." <u>Id.</u>; see <u>Bimbo Bakeries USA, Inc. v. Rubio</u>, 771 F. Supp. 3d 584, 591 (E.D. Pa.

2025) (finding that applicant's visa was refused after he was told additional processing was needed and the government provided a declaration of an attorney-advisor in the Office of the Assistant Legal Adviser for Consular Affairs who attested that the consular database reflected the applicant's visa was refused on the day of his interview).

Plaintiff artfully pleads his claim and avers to facts in his affidavit such that he never *explicitly* states that he was told his visa application was refused. See Dkt. Nos. 1, 20. Instead, Plaintiff states that the consular officer "verbally informed Plaintiff that his case required further administrative processing" and the morning after his interview, Plaintiff received an email from the State Department containing a supplemental questionnaire. Dkt. No. 1 ¶¶ 39–40. Plaintiff also avers in his affidavit the consular officer told him that "additional security checks would be required before the visa could be issued." Dkt. No. 20-1 ¶ 8; see Bimbo Bakeries USA, Inc., 771 F. Supp. 3d at 591 (stating that the applicant's complaint did not allege that his visa application was "refused" at his interview).

Even when drawing reasonable inferences in favor of Plaintiff as the nonmovant, the Court must conclude that there is no genuine dispute of material fact in this case. Defendant's declaration satisfied its initial burden to show that there is an absence of evidence to support Plaintiff's position that no decision was made

on his visa. See Dkt. No. 4-1. Plaintiff tries to cast doubt on Defendant's position that his application was refused by implying that he was not told that his visa was refused during the interview. In doing so, Plaintiff fails to explicitly acknowledge or disavow the consular officer's affidavit that Plaintiff's visa was refused. Plaintiff has failed to bring forth any evidence or argument that a refusal only counts if he is informed of it at the interview. As a result, Plaintiff does not identify any *affirmative* evidence to support his contention or dispute the Defendants'. The undisputed facts show that after his consular interview, Plaintiff's visa petition was refused and placed into administrative processing. See Bimbo Bakeries USA, Inc., 771 F. Supp. 3d at 591 (concluding that the applicant's visa was refused when "at the visa interview, the visa officer briefly considered [the applicant's] resume and stated his application required additional processing," the applicant then "received an email requesting additional information, which he provided," and "his application has remained in administrative processing" limbo since that time" (internal citation and quotations omitted)).

With this factual matter resolved, the Court can now turn to whether refusing a visa and then placing it into administrative processing is a final decision that satisfies the non-discretionary duty to grant or refuse a petition.

ii.  **Split Decisions Among Courts**

Courts are split on whether placing a visa petition in administrative processing constitutes a final decision.[8] Many courts have concluded that administrative processing is not a final decision on the visa but rather "the functional equivalent of immigration limbo." Anid Infosoft LLC, 2023 WL 7312488, at *4; see, e.g., Vulupala, 438 F. Supp. 3d at 98 ("[E]ven if the State Department chooses to characterize a section 221(g) notification as a 'refusal,' an interim decision is not sufficiently final to warrant the application of the doctrine [of consular

---

[8] Many of the cases addressing whether placing a visa petition in administrative processing amounts to a final decision involve *immigrant visas*. See, e.g., Karimova v. Abate, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam); Omar v. Blinken, No. 24-cv-60, 2024 WL 4803847, at *7–8 (S.D. Ohio Nov. 15, 2024); Hajizadeh v. Blinken, No. CV 23-1766, 2024 WL 3638336 (D.D.C. Aug. 2, 2024). The case before the Court involves a *nonimmigrant visa*. Different regulations apply in each situation. The procedure for refusing an immigrant visa is addressed by 22 C.F.R. § 42.81 while refusal of nonimmigrant visas is covered by 22 C.F.R. § 41.121. However, in both regulations, paragraph (a) addresses the grounds for visa refusal and uses the same language. Compare 22 C.F.R. § 42.81(a) ("When a visa application has been properly completed and executed before a consular officer . . . , the consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or, . . . discontinue granting the visa.") with 22 C.F.R. § 41.121(a) (stating that visa refusals must be based on the INA or other applicable law and that "[w]hen a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa, or, . . . discontinue granting the visa"). Accordingly, cases considering a visa refusal and subsequent administrative processing under § 42.81(a) are still informative for cases arising under § 41.121(a).

nonreviewability.]"); <u>Kahbasi v. Blinken</u>, No. 23-1667, 2024 WL
3202222, at *5 (D.D.C. June 27, 2024) ("Plaintiffs seek final
processing of their visa applications, which are in suspended
administrative processing. An order by this court compelling
adjudication of Plaintiffs' visas—not re-adjudication, but rather
completion of the process—would remedy Plaintiffs' injuries by
freeing them from the interim processing stage." (citation and
quotations omitted)); <u>Hajizadeh</u>, 2024 WL 3638336, at *3 ("A long
line of decisions from this Court have held that the consular
nonreviewability doctrine applies only to final decisions and thus
does not bar judicial review of a consular officer's delay when a
visa application has been provisionally refused pending a final
decision. [Plaintiff's] visa application remains in administrative
processing. Thus, the doctrine does not apply." (citation and
quotations omitted) (alterations adopted)).

On the other hand, many courts have concluded that a consular
officer's refusal of a visa and subsequent placement of the visa
into administrative processing is a final decision. <u>See, e.g.</u>,
<u>Karimova</u>, 2024 WL 3517852, at *3-6 (holding that plaintiff did not
make a showing of agency inaction under APA § 706 or satisfy her
burden for a writ of mandamus when the consular officer rejected
her visa claim and placed the application in administrative

processing);[9] Conley, 731 F. Supp. 3d at 111 ("On balance, the Court is persuaded that the consular officer's refusal of a visa application is a final decision for the purposes of an unreasonable-delay claim under the APA. In short, a denial is 'final' unless and until it has been overturned. Because defendants have acted on the visa application, they have not failed to take any legally required action, and Count 1 does not state a claim upon which relief can be granted and will be dismissed."); Yaghoubnezhad v. Stufft, 734 F. Supp. 3d 87, 101 (D.D.C. 2024) ("In refusing Plaintiffs' applications under § 221(g) after their interviews with consular officers, State complied with the regulations governing visa adjudications. It thereby discharged its nondiscretionary duty."); Gonazlez, 2024 WL 4894389, at *8 (following Karimova and holding that there was not a "non-discretionary duty to act on an already refused visa application."); Aslam v. Heller, No. 23-cv-971, 2024 WL 3535389, at *6 (M.D.N.C. July 23, 2024) ("Plaintiff's argument that Defendants must take particular actions after refusing a visa application for administrative processing under Section 221(g) in

---

[9] Plaintiff points out that this case holds no precedential value because it is an unpublished per curiam decision. Dkt. No. 9 at 13; see also D.C. Cir. R. 36(e)(2) (stating that unpublished decisions can be cited to the courts but "a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition"). Nevertheless, Karimova functions as persuasive authority to this Court.

order to discharge their non-discretionary duty to grant or to refuse a visa application requires the Court to impose a duty that has no basis in the INA or its implementing regulations." (citation and quotations omitted)).

### iii. Plaintiff Received a Final Decision on his Visa.

The non-discretionary duties of a consular officer under 22 C.F.R. § 41.121 can be resolved by examining the plain language of the regulation.[10] Section 41.121(a) states that a consular officer *must* grant or refuse a visa, and refusals *must* be based on legal grounds such as a violation of INA 221(g). 22 C.F.R. § 41.121(a). Further, when a consular officer refuses a visa, "he or she *must* inform the alien of the ground(s) of ineligibility . . . and whether there is, in law or regulations, a mechanism (such as a waiver) to overcome the refusal." Id. § 41.121(b) (emphasis added).

---

[10] The United States Supreme Court's decision in Loper Bright Enterprises v. Raimondo, which held that courts are not required to give deference to agency's interpretation of statutes, is inapplicable here. 603 U.S. 369 (2024). This case involves agency regulations which are governed by Auer v. Robbins, 519 U.S. 452 (1997), as modified by Kisor v. Wilkie, 588 U.S. 558 (2019). The Court does not need to apply Auer deference here for two reasons: (1) the agency is not asking the Court to defer to its interpretation of the regulation and (2) the regulation is not ambiguous as the Court's holding relies on the regulation's plain meaning. See United States v. Dupree, 57 F.4th 1269, 1274-75 (11th Cir. 2023) ("[O]nly if a regulation is genuinely ambiguous should Auer deference be applied. . . . To determine whether ambiguity exists, courts first must exhaust all the traditional tools of construction." (internal citation and quotations omitted)).

The word "must" means "be commanded or requested to," "be urged to," or "ought by all means to."[11] Must, Merriam Webster (2024); see also Must, Oxford English Dictionary (2024) ("[e]xpressing necessity" or "obliged or required to"). Thus, the regulation's plain language identifies a consular officer's non-discretionary duty. An officer has a duty to either grant or refuse the visa; importantly, nothing in the regulation suggests that an officer can opt to delay making a decision or issue a temporary decision. If the officer decides to refuse the visa, then she or he has a duty to ensure the refusal is based on legal grounds and to inform the applicant of the grounds for ineligibility as well as any methods to overcome the refusal.

The determination that a visa refusal followed by administrative processing constitutes a final decision is further

---

[11] Former Justice Scalia and Bryan Garner identify a canon of construction known as the "Mandatory/Permissive Canon." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 113 (2012). This canon provides that "mandatory words impose a duty," while "permissive words grant discretion." Id. at 112. Although the specific chapter of their book focuses on the word "shall," one example in that chapter explains the use of "shall" by referencing "must." Id. at 113. Take, for example, this sentence: "Neither party *shall* be reimbursed by the other party for its expenses." Id. (emphasis in original). Justice Scalia and Garner explain that in this context, "*shall* is mandatory" because it "means that neither party *must* be reimbursed." Id. (emphasis in original). This example identifies that, like "shall," "must" imposes a mandatory duty. See Cremeens v. City of Montgomery, 602 F.3d 1224, 1227 (11th Cir. 2010) ("We apply the canons of construction to regulations as well as to statutes.").

supported by the fact that the regulation provides a mechanism to overcome the refusal. 22 C.F.R. § 41.121(b)(1). The State Department's Foreign Affairs Manual provides that an applicant can overcome a visa refusal if (1) administrative processing is finished, or, (2) for refusals like Plaintiff's that are based on INA § 221(g), by presenting "additional evidence that allows [the consular officer] to *re-open and re-adjudicate* the case." 9 FAM 403.10-4(B)(a) (emphasis added).[12] Thus, the initial refusal of Plaintiff's visa was not an "interim" decision; instead, it was a final decision made by the consular officer that has the potential to be re-opened and re-adjudicated at a later point.

Consider, for example, a decision issued by a court. When a court publishes its Order, that constitutes the court's final decision on the matter in question. However, parties can seek to re-open or re-adjudicate the matter via an appeal or by filing a motion for reconsideration. The fact that mechanisms exist for possible review at a later point does not make the initial decision any less of a final decision. For instance, no one would dispute that an order denying a motion to dismiss has closed out the motion, even if an appeal or motion to reconsider is filed. In

---

[12] The State Department "articulates official guidance, including procedures and policies, on matters relating to Department management and personnel in the Foreign Affairs Manual (FAM) and the Foreign Affairs Handbook (FAH) series." 22 C.F.R. § 5.5. Although not binding on the Court, it is persuasive guidance.

other words, even if the officer's "denial might be subject to reconsideration in the future, that alone does not support a viable claim for unreasonable delay; indeed, almost any agency decision could be reconsidered or revised." Conley, 731 F. Supp. 3d at 111.

Plaintiff asserts that Defendants have not fulfilled their nondiscretionary duty because his application still awaits adjudication. More specifically, Plaintiff contends that a "§ 221(g) 'refusal' is a placeholder process," dkt. no. 1 ¶ 55, and moving his application to administrative processing does not "constitute a final denial of a visa request," id. ¶ 70; see also id. ¶¶ 39, 52 (stating Plaintiff was placed into administrative processing). However, "nothing in § 41.121 provides a 'specific, unequivocal command' for [Defendants] to issue a final, unreviewable decision." Yaghoubnezhad, 734 F. Supp. 3d at 101 (quoting SUWA, 542 U.S. at 63). "Nor does any statute or regulation require [Defendants] to complete 'administrative processing' once it has already properly refused a visa." Id. Put simply, "it is unclear what 'non-discretionary duty' purportedly imposed by this regulation [22 C.F.R. § 41.121(a)] has been 'unlawfully withheld'" when the consular officer did exactly what the regulation requires—to refuse a visa based on legal grounds, specifically INA § 221(g), and then place the application into administrative processing to obtain more information. Id. at 101–02 (quoting Tesfaye v. Blinken, No. 22-411, 2022 WL 4534863, at *5 (D.D.C. Sept. 28, 2022)); see

also <u>Omar</u>, 2024 WL 4803847, at *7–8 ("A plain reading of § 42.81(a) and § 41.121(a) indicates that the refusal that occurred here, a refusal under INA 221(g), is all that the regulations require . . . . As a result, this Court finds that, while the applicable regulations do create some nondiscretionary duty, that duty is fulfilled by a denial under 221(g).") . In sum, the Court concludes that when an individual submits his nonimmigrant visa application, participates in a consular interview, is refused a visa under § 221(g), and is permitted to provide supplemental information—just like Plaintiff here—a final decision has been issued on the visa petition. Having reached this conclusion, the Court turns, finally, to Plaintiff's unreasonable delay claim.

**C. Unreasonable Delay Claim**

To state a claim for unreasonable delay, a Plaintiff must allege (1) that the agency failed to take a discrete agency action that it is required to take, and (2) that the delay in taking the required action was unreasonable. <u>Da Costa v. Immigr. Inv. Program Off.</u>, 80 F.4th 330, 340 (D.C. Cir. 2023) (citations and quotations omitted). Plaintiff argues that he sets forth a claim for unreasonable delay because a § 221(g) visa refusal and subsequent administrative processing is not a final decision and therefore the agency has failed to act. Dkt. No. 9 at 12, 14–15. In other words, for Plaintiff's unreasonable delay claim to survive, Defendants must have a nondiscretionary duty to make a

final decision on visa petitions, and Defendants must have failed to do so.

As thoroughly discussed supra, the Court concludes that an officer's refusal of Plaintiff's visa pursuant to INA § 221(g) is a final decision even if the visa petition was subsequently placed in administrative processing. Thus, "[b]ecause [D]efendants have acted on the visa application, they have not failed to take any legally required action." Conley, 731 F. Supp. 3d at 111. As a result, Plaintiff fails to properly assert a claim that Defendants unreasonably delayed adjudicating his visa application in violation of the INA or APA § 555(b).

To be clear, Plaintiff does not argue Defendants have a nondiscretionary duty to *re-adjudicate* a visa petition or that such a duty was violated here. Indeed, Plaintiff's complaint and briefing is abundantly clear that his claim arises only out of Defendants' duty to adjudicate, not re-adjudicate, a visa petition. See, e.g., Dkt. No. 1 ¶¶ 1 ("Plaintiff requests that the Court order Defendants to take action and *adjudicate* his long-pending L-1A request" (emphasis added)), 8 ("As of the date of this Complaint, Defendant has *failed to adjudicate* Plaintiff's L-1A visa request or to give a substantive explanation for the continued delays." (emphasis added)), 9 ("Plaintiff has not been informed of any information that the government is missing to properly *adjudicate* his visa request . . . ." (emphasis added)),

16–18 (stating that the State Department owes a duty to *adjudicate* Plaintiff's visa request and requesting the Court "direct Defendants to *adjudicate*" the visa (emphasis added)), 27 ("Defendant has a non-discretionary duty to *adjudicate* the L-1A request that is the subject of this Action." (emphasis added)), 53 ("Defendant Scharpf is himself a consular officer who could adjudicate Plaintiff's request."), 62 (stating there is seemingly no order in which to adjudicate applications), 78–81 (stating Defendants have breached their *duty to adjudicate* Plaintiff's visa within a reasonable timeframe, Defendants *refuse to adjudicate* Plaintiff's visa, and this refusal is reviewable under APA § 702), 84 (stating that mandamus lies because Plaintiffs have a nondiscretionary duty to *adjudicate* the visa request), 86–87 (mandamus is the only remedy to address "Defendant's *failure to adjudicate* his visa request" (emphasis added)); Dkt. No. 9 at 13 ("Again, this case is not about Plaintiff 'asking the Court to issue another decision on [his] refused visa application' because there is no final decision in Plaintiff's case."), 14 ("Plaintiff, however, does not request '*re-adjudication*' of a visa application[.]" (emphasis added)), 16 ("Nor does Plaintiff demand, contrary to Defendants' assertion, that the Secretary *re-adjudicate* Plaintiff's visa." (emphasis added)), 17 ("Defendants have yet to produce a final decision on Plaintiff's pending visa application"), 19 ("But Plaintiff again simply wants a decision on

an application that has been unreasonably delayed."). Thus, the Court need not address whether Defendants have a duty to re-adjudicate a visa after receiving an applicant's supplemental information.

In sum, because the officer's refusal of Plaintiff's visa pursuant to INA § 221(g) is a final decision, Plaintiff fails to properly assert a claim that Defendants unreasonably delayed adjudicating his visa application in violation of the INA or APA § 555(b).[13] Defendants' motion, dkt. no. 4, is therefore **GRANTED**.

## CONCLUSION

The Court holds that, as a matter of law, a consular officer's decision to refuse a visa and place the application in administrative processing constitutes a final decision. Here, Defendants issued such a decision on Plaintiff's visa application. Thus, Plaintiff's claim that Defendants unreasonably delayed adjudication of his visa in violation of the APA or INA fails. For these reasons, Defendants' motion to dismiss, construed as a motion for summary judgment, dkt. no. 4, is **GRANTED**. There being no claims

---

[13] Defendants contend that Defendant Secretary of State and Defendant Assistant Secretary of State should be dismissed from this action because they cannot adjudicate an application for a visa. Dkt. No. 4 at 18. Plaintiff argues that these individuals are proper defendants because the Secretary of State and Assistant Secretary can ensure that the officers they supervise carry out mandatory duties. Dkt. No. 9 at 15–16. Because the Court grants Defendants' motion on other grounds, the Court need not address the merits of this argument.

remaining in this action, the Clerk is **DIRECTED** to enter judgment in favor of Defendants and close this case.

      **SO ORDERED** this 30th day of June, 2025.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

28